1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

12

RICHARD ALTON WISLER,

Case No. 1:20-cv-00665-EPG

13

Plaintiff,

FINAL JUDGMENT AND ORDER
REGARDING PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

14

v.

15

COMMISSIONER OF SOCIAL
SECURITY,

(ECF Nos. 1, 20).

16
17

Defendant.

18
19

    This matter is before the Court on Plaintiff's complaint for judicial review of an

20

unfavorable decision by the Commissioner of the Social Security Administration regarding his

21

application for disability insurance benefits. The parties have consented to entry of final judgment

22

by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal

23

to the Court of Appeals for the Ninth Circuit. (ECF No. 12).

24

    Plaintiff argues in his motion for summary judgment that (1) The ALJ erred by rejecting

25

the opinions of treating physician Dr. Wenthe and examining physician Dr. Pompan without

26

setting forth specific, legitimate reasons; and (2) The ALJ failed to include work-related

27

limitations in the residual functional capacity (RFC) assessment consistent with the nature and

28

intensity of Plaintiff's limitations and failed to offer legitimate reasons for rejecting Plaintiff's

1    subjective complaints. (ECF No. 20, p. 1).

2         Having reviewed the record, administrative transcript, the briefs of the parties, and the

3    applicable law, the Court finds as follows:

4    **I.**        **ANALYSIS**

5        **A.**       **Dr. Wenthe's Opinion**

6         Plaintiff argues that the ALJ erred by failing to give specific and legitimate reasons for

7    discounting the opinion of Plaintiff's treating physician, Dr. Wenthe, who offered an opinion on

8    Plaintiff's work limitations in an August 15, 2017 medical source statement (MSS). (ECF No. 20,

9    p. 10). Pertinent here, Dr. Wenthe opined that Plaintiff's low back pain and sciatica would limit

10    Plaintiff to sitting for no more than 15 minutes before having to alternate his posture by resting in

11    a reclined position for 30 minutes; he could stand or walk about for no more than 15 minutes

12    before having to lie down or recline in a supine position for 15 minutes; he could sit for a total of

13    3 hours in an 8 hour work day; he could stand or walk for a total of less than 1 hour in an 8 hour

14    work day; Plaintiff would need periods of rest to relieve his pain; Plaintiff would need to rest for

15    4 hours during an 8 hour work day; Plaintiff could occasionally lift up to 10 pounds; and a hand-

16    held assistive device would be medically required for prolonged ambulation. (A.R. 560-64).

17         The Ninth Circuit has held the following regarding such opinion testimony:

18
19        The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and
20        laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a
21        treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination,
22        the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6).

23        "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial
24        evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.
25        2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate
26        reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The]
27        reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.").

28

1

2

> "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

3

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).[1]

4

5

The ALJ assigned little weight to Dr. Wenthe's opinion, providing the following reasoning:

6

7

8

9

10

11

12

13

14

> Dr. Wenthe's opinion is extreme and not consistent with the record. Notably, Dr. Wenth"'s own treatment notes do not support his opinion, as the clinical abnormalities were typically limited to decreased range of motion of the lumbar spine with tenderness. (*See e.g.* Exhibit IF/62, 71, 79; *see also* Exhibit 9F). Dr. Wenthe's treatment notes also reflect that the claimant typically reported experiencing moderate relief with treatment, which is inconsistent with his extreme limitations. (*See e.g.* Exhibit IF/110; 7F/8; 19F/26; *see also* Exhibit 19F/86). The undersigned also notes that the claimant's reports to Dr. Wenthe was inconsistent with the record. For instance, the claimant reported to Dr. Wenthe that he did not obtain relief from the nerve stimulator during the trial period (Exhibit 19F/65); however, the pain clinic notes show he was overall 60% better with the trial (Exhibit 13F/13). Accordingly, the undersigned assigns Dr. Wenthe's opinion little weight.

(A.R. 22).

15

16

17

18

19

The first reason identified to support the ALJ's assignment of little weight to Dr. Wenthe's opinion is that the opinion was "extreme" and inconsistent with Dr. Wenthe's own treatment notes. While "[a] conflict between a treating physician's medical opinion and his own notes is . . . a specific and legitimate reason for rejecting it," here, Wenthe's opinion is not inconsistent. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

20

21

22

23

24

As for the clinical abnormalities being "typically limited to decreased range of motion of the lumbar spine with tenderness," the ALJ fails to explain how such findings are inconsistent with Plaintiff's low back pain or sciatica or Dr. Wenthe's opined limitations. Perhaps, the ALJ meant to convey that more serious findings would be expected to support Dr. Wenthe's opinion; however, the ALJ fails to explain what such findings would be.

25

26

And, as for the reports of "moderate relief with treating" being "inconsistent" with Dr.

27

28

---

[1] Because Plaintiff filed his application before March 27, 2017, 20 C.F.R. § 404.1527 applies in considering the weight given to her treating physicians' opinions. For applications filed on or after March 27, 2017, 20 C.F.R. § 404.1520c applies in considering medical opinions; notably, no deference or specific evidentiary weight is given to medical opinions.

Wenthe's assessed limitations, the record as a whole does not support this conclusion. Notably, Plaintiff repeatedly reported pain, with it often being severe, and Plaintiff tried multiple methods of treatment with short-lived success. For example, on September 23, 2016, Plaintiff reported new moderate pain in the lumbar spine to Dr. Wenthe. (A.R. 339). Returning on September 29, 2016, Plaintiff described the pain as getting worse. (A.R. 349). Plaintiff attended multiple physical therapy sessions with some reports of more pain but other reports of some relief. (A.R. 611-19).

Plaintiff continued to experience pain, reporting severe pain that worsened at night on November 7, 2016, severe pain on November 10, 2016, and severe pain on November 30, 2016, now averaging 9/10 in severity. (A.R. 373, 383, 447). On December 22, 2016, Plaintiff received epidural injections. (A.R. 449, 472). However, Plaintiff continued to report severe pain to Dr. Wenthe on January 3, 2017. (A.R. 391-92). A January 9, 2017 letter to Dr. Wenthe from Dr. Brant reported that Plaintiff experienced only two days of reasonable relief with his pain thereafter returning to baseline levels, reporting that Plaintiff was "essentially disabled by his pain at this point." (A.R. 452). Dr. Brant recommended surgery.

On February 3, 2017, Plaintiff continued to report severe pain to Dr. Wenthe. (A.R. 412). On February 9, 2017, Plaintiff had surgery. (A.R. 499). On March 14, 2017, Plaintiff reported he was still having pain, with sitting pain being 7-8/10 and walking pain being 5/10. (A.R. 422). On March 24, 2017, Plaintiff had mild low back pain. (A.R. 499). On April 21, 2017, Plaintiff reported back pain with walking got better after the surgery but had consistent pain with sitting. (A.R. 520). The record reflects a pain scale of 9/10. (A.R. 520). On May 16, 2017, Plaintiff continued to experience severe pain in the lumbar spine. (A.R. 555). Following epidural steroid injections, Plaintiff had temporary relief from his pain symptoms. (A.R. 578, 581, 584).

On August 15, 2017, Plaintiff reported moderate pain with symptoms "aggravated by position." (A.R. 777). Plaintiff underwent a spinal cord stimulator trial on November 16, 2017 reporting pain was overall 60% better. (A.R. 590). On December 20, 2017, Plaintiff reported moderate pain "aggravated by position." (A.R. 804). On June 22, 2018, Plaintiff reported moderate pain and noted that, while he was supposed to have a spinal stimulator implanted, he did not have it installed "because the trial period did not get any relief." (A.R. 816). On December

4

1    21, 2018, Plaintiff again reported moderate pain "aggravated by position." (A.R. 837).

2         The records show that Plaintiff's treatment only temporarily helped his pain. *Lester v.*

3    *Chater*, 81 F.3d 821, 833 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("Occasional symptom-free

4    periods . . . are not inconsistent with disability."). And while the later record indicates that

5    Plaintiff's pain level was sometimes reported as moderate rather than severe, the ALJ fails to

6    explain how such moderate symptoms are inconsistent with Dr. Wenthe's assessed limitations.

7    *See Gregory C. v. Comm'r, Soc. Sec. Admin.*, 426 F. Supp. 3d 660, 679 (D. Or. 2019) ("That

8    Plaintiff did not show fatigue, but did complain of moderate pain, during an examination of

9    undefined length is also not inconsistent with a disabling level of impairment.").

10        The second reason identified to support the ALJ's assignment of little weight to Dr.

11   Wenthe's opinion is that the opinion was inconsistent with the record, specifically, because

12   Plaintiff reported that he did not obtain relief during the nerve stimulator trial in contradiction to a

13   record reporting that he was 60% better. (A.R. 22). While "an ALJ may discredit treating

14   physicians' opinions that are conclusory, brief, and unsupported by the record as a whole [] or by

15   objective medical findings," here, the record does not show that Wenthe's opinion was

16   inconsistent with the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th

17   Cir. 2004) (internal citations omitted).

18        It is true that Plaintiff reported on one occasion that his pain had improved by 60%. (A.R.

19   590). However, as noted, Plaintiff generally reported temporary improvement in his symptoms,

20   with his pain being worse dependent on what position he was in. Based on such evidence, it is

21   unreasonable to strictly construe Plaintiff's later report to Dr. Wenthe—that he decided not to

22   have a spinal stimulator implanted because he did "not get any relief"—as the context of the

23   medical records indicates that Plaintiff did not get the degree of relief that would warrant having

24   the implant instead of no relief at all. (A.R. 816). Indeed, if Plaintiff had truly obtained sufficient

25   relief from the trial, he would have agreed to the implant.

26        For the above reasons, the Court concludes that the ALJ failed to give specific and

27   legitimate reasons, supported by substantial evidence, to assign Dr. Wenthe's opinion little

28   weight.

1    **B.     Dr. Pompan's Opinion**

2         Plaintiff argues that the ALJ erred by failing to give specific and legitimate reasons for

3    discounting the opinion of examining physician Dr. Pompan. (ECF No. 20, p. 12). Specifically,

4    Dr. Pompan opined that Plaintiff could not perform duties requiring 3 to 6 hours of sitting, that he

5    was unable to lift 25 pounds, and that his major issue was prolonged sitting which leads to low

6    back and leg pain. (A.R. 572). Dr. Pompan concluded that, while Plaintiff may have some

7    improvement in his symptoms over time, he would not be able to return to his past work and that

8    this would be a "permanent incapacity." (A.R. 572).

9         The opinion of an examining physician is entitled to greater weight than a nonexamining

10   physician. *Lester*, 81 F.3d at 830. "And like the opinion of a treating doctor, the opinion of an

11   examining doctor, even if contradicted by another doctor, can only be rejected for specific and

12   legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

13        The ALJ assigned little weight to Dr. Pompan's opinion, providing the following

14   reasoning:

15        On April 9, 2018, the claimant presented to Donald C. Pompan, M.D. for an
          independent medical examination. Dr. Pompan opined that the claimant would not
16        be able to sit for 3 to 6 hours a day or lift up to 25 pounds. (Exhibit 9F). The
          undersigned assigns Dr. Pompan's opinion little weight. While Dr. Pompan
17        specializes in orthopedic surgery, his opinion was based on a one-time
          examination of the claimant. Moreover, his report indicates that his review of the
18        post-operative medical evidence was generally limited to Dr. Wenthe's treatment
          notes. (Exhibit 9F/6-7). Thus, he did not have the opportunity to review the overall
19        record, which shows the claimant reported overall improvement with the nerve
20        stimulator trial. (Exhibit 13F/13). Rather, Dr. Pompan erroneously relied on the
          claimant's report to Dr. Wenthe that he did not obtain relief from the nerve
21        stimulator during the trial period, as discussed above. (Exhibit 9F /2). Furthermore,
          the undersigned finds the clinical abnormalities were generally mild in light of Dr.
22        Pompan's opinion. *Id.* at 4. Similarly, despite the claimant's reports of disabling
23        pain to Dr. Pompan, the claimant's treating providers' examinations support the
          claimant can perform work within the residual functional capacity as they show
24        the claimant was typically in no distress and exhibited normal reflexes, muscle
          tone and gait, 5/5 motor strength in the bilateral lower extremities, and intact
25        sensation. (*See e.g.* Exhibit 6F/6, 16; 13F/l, 3, 6, 13). Accordingly, the undersigned
26        assigns Dr. Pompan's opinion little weight.

27   (A.R. 22-23).

28

1    The first reason identified to support the ALJ's assignment of little weight to Dr.

2  Pompan's opinion is that it was based on a single examination and was generally limited to Dr.

3  Wenthe's treatment notes. While unsupported opinions may be rejected, *see Meanel v. Apfel*, 172

4  F.3d 1111, 1114 (9th Cir. 1999), *as amended* (June 22, 1999), the simple fact that Dr. Pompan

5  only examined Plaintiff one time and mostly relied on Dr. Wenthe's treatment notes is not, by

6  itself, a sufficient reason to reject the assessed limitations. After all, as Plaintiff points out, the

7  ALJ assigned mostly great weight to two State agency medical consultants' opinions even though

8  neither examined Plaintiff nor reviewed the entire record. (ECF No. 20, p. 13, referring to A.R.

9  23).

10    The second reason identified to support the ALJ's assignment of little weight to Dr.

11  Pompan's opinion is that it was inconsistent with the record because Dr. Pompan relied on Dr.

12  Wenthe's records incorrectly indicating that Plaintiff "did not obtain relief from the nerve

13  stimulator during the trial period," the findings of clinical abnormalities were "mild," and

14  Plaintiff had some normal findings, such as motor strength.

15    However, as noted above, the ALJ's characterization of Plaintiff's statement about the

16  nerve stimulator is an unreasonably strict reading of the record, which, in context indicates that

17  Plaintiff did not obtain sufficient relief from the nerve stimulator. Moreover, as discussed, the

18  medical records indicated that Plaintiff often had severe symptoms that multiple treatment options

19  failed to remedy. Lastly, the ALJ failed to explain how some normal findings, such as motor

20  strength, contradicted Dr. Pompan's assessed limitations, which were generally based upon

21  Plaintiff's pain symptoms. *Solano v. Saul*, No. 1:19-CV-1351 JLT, 2021 WL 792735, at *6 (E.D.

22  Cal. Mar. 2, 2021), *as amended* (Mar. 3, 2021) ("However, the ALJ failed to explain how

23  Plaintiff's motor strength and grip strength are inconsistent with the lifting and carrying

24  restrictions, which Dr. Fabella indicated were not based upon the strength testing, but instead 'due

25  to cervicalgia and back pain.'").

26    For the above reasons, the Court concludes that the ALJ failed to give specific and

27  legitimate reasons, supported by substantial evidence, to assign Dr. Pompan's opinion little

28  weight.

1

    **C.**      **RFC Assessment and Subjective Testimony**

2

        Lastly, Plaintiff argues that the ALJ failed to account for Plaintiff's reported limitations in

3

the RFC assessment and did not provide clear and convincing reasons to reject his subjective

4

symptom testimony. (ECF No. 20, p. 15).

5

        A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20

6

C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,

7

§ 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the

8

capacity for sustained performance of the physical-mental requirements of jobs"). In formulating

9

the RFC, the ALJ considers, among other things, a claimant's description of his limitations. 20

10

C.F.R. § 416.945(a)(3).

11

        The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective

12

complaints:

13

      Once the claimant produces medical evidence of an underlying impairment, the
      Commissioner may not discredit the claimant's testimony as to subjective

14

      symptoms merely because they are unsupported by objective evidence. *Bunnell v.*
      *Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v.*

15

      *Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to
      discredit excess pain testimony solely on the ground that it is not fully

16

      corroborated by objective medical findings"). Unless there is affirmative evidence
      showing that the claimant is malingering, the Commissioner's reasons for rejecting

17

      the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876
      F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ

18

      must identify what testimony is not credible and what evidence undermines the
      claimant's complaints.

19

20

*Lester,* 81 F.3d at 834.

21

        Here, the ALJ assessed Plaintiff's RFC as follows:

22

      After careful consideration of the entire record, the undersigned finds that the
      claimant has the residual functional capacity to perform light work as defined in 20

23

      CFR 404.1567(b) except: he can lift, carry, push, and pull 20 pounds occasionally
      and 10 pounds frequently; he can stand/walk for 4 hours in an 8-hour workday; he

24

      can sit for 6 hours in an 8-hour workday; he can frequently climb ramps, balance,
      kneel, and crouch; and he can occasionally climb ladders, stoop, and crawl.

25

26

(A.R. 19).

27

        The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably

28

be expected to cause the alleged symptoms." (A.R. 32). Accordingly, because there is no

affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's

decision for clear and convincing reasons, supported by substantial evidence, for not giving full

weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's subjective complaints and the reasons for discounting

them as follows:

> At the hearing, the claimant testified that he retired on November 2017 after not being able to provide a medical release to return to work. He lost retirement income for not waiting to retire until age 65. The claimant lived with his wife and his 23-year-old son. He has not driven since November 2016. He was able to bathe and dress himself, but needed assistance from his wife to put on his socks and shoes. He spent most days at home. On an average day, he did meditation and prayer, stretched for 20 to 25 minutes, ate breakfast, watched the news, went on the internet, unloaded the dishwasher, folded clothes, straightened up the house, and napped in the afternoon. He spent most of his time in his recliner, which totaled 8 to 10 hours a day. He had to lie down for 20 to 30 minutes. He could do a task for 10 to 15 minutes, but then needed to take a break for 15 to 20 minutes to relieve his pain. His real pain was with sitting, but he also had pain after standing. He believed he could be on his feet for a total of 3 hours a day. He used a cane, which was not prescribed. He felt his cane was necessary for stability and balance. He fell once in 2017. He used his cane for reassurance. He could lift 10 to 15 pounds. He did not sleep well at night. He had medication side effects of drowsiness and upset stomach if he did not eat well in the morning. He received epidural injections that were not beneficial. He used a TENS unit for 20 to 30 minutes, every hour. He tried a nerve stimulator for 5 to 6 days but it made his pain worse. He used a heating pad at night. His medication reduced his pain to a 6 on a 10-point scale for 3 to 4 hours.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> . . . .

> Notably, the claimant's activities of daily living support he can perform work within the residual functional capacity. Despite his pain, the claimant was able to unload the dishwasher, fold clothes, and straighten up the house. (Testimony). The undersigned also finds the claimant's reported activities inconsistent with the record. For instance, the claimant reported significant limitations such as inability to drive or shop for groceries (Testimony and Exhibit 4E); yet, the treatment records show he was able to go on a cruise, which requires sitting and traveling

1

2

3

4

5

6

7

8

(Exhibit 19F/75). As for the claimant's response to treatment, the claimant's testimony is not consistent with the evidence. At the hearing, the claimant testified that the nerve stimulator made his pain worse. (Testimony). However, the pain clinic notes show he reported 100% improvement in the left lower extremity with an overall improvement of 60%. (Exhibit 13F/13). Lastly, while the claimant testified that he needed a cane for stability and balance, the record does not demonstrate that the claimant was prescribed a cane nor was he noted to be using a cane on a regular basis after his lumbar surgery. (*See e.g.* Exhibit 4F/23). Accordingly, under Social Security Ruling 96-9p, the undersigned finds that the claimant's reported use of a cane is not medically necessary. While no single factor is determinative in evaluating the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, the evidence discussed herein demonstrates that the claimant is able to perform the activities within the above residual functional capacity.

9

10

(A.R. 20-22).

11

12

13

First, the ALJ discounted Plaintiff's subjective complaints as unsupported by the medical record. However, for the same reasons discussed above, the ALJ failed to properly consider the record as a whole in evaluating Plaintiff's limitations.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Next, the ALJ pointed to Plaintiff's ability to carry out some daily tasks as being inconsistent with his symptoms. However, the ALJ failed to explain how Plaintiff's ability to perform simple daily tasks was inconsistent in light of any record evidence. For example, although Plaintiff testified that he could do light housework, such as fold clothes, he clarified that he could usually only do a task for 10 to 15 minutes before needing to take a break for 15 to 20 minutes to relieve his pain. (A.R. 37, 38). Such testimony is not inconsistent with Plaintiff's professed limitations. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved."). Similarly, Plaintiff's ability to go on a vacation, without any discussion of what this entailed beyond some unspecified level of "sitting and traveling," is not a clear and convincing reason to reject Plaintiff's professed limitations. *See Davis v. Colvin*, No. 14-CV-04237 NC, 2015 WL 12697628,

at \*4 (N.D. Cal. June 30, 2015) ("To be sure, the ALJ does state that the inconsistencies with daily living activities 'include being independent for activities of daily living and going on vacations.' But as explained above, these types of conclusory statements fail to satisfy both the 'clear and convincing' standard as well as the 'specific and legitimate reasons' standard.").

Lastly, neither the professed inconsistency in Plaintiff's reports of relief from the nerve simulator, nor Plaintiff's non-prescribed use of a cane, which Dr. Wenthe concluded was medically required for prolonged ambulation, are sufficient bases to discount his testimony.

Accordingly, the Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

### D.    REMEDY

Plaintiff concludes by stating that this case should remanded for further proceedings and does not request an award of benefits. (ECF No. 20, p. 17). Defendant argues that, if this Court overturns the ALJ's decision, the proper remedy is a remand for further administrative proceedings. (ECF No. 23, p. 22).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test, with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met, the Court may still remand when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

1        Here, after review of the record as whole, and given that Plaintiff does not ask for a

2   remand for payment of benefits, the Court concludes that a remand for further proceedings is

3   appropriate.

4   **II.        CONCLUSION AND ORDER**

5        Accordingly, the decision of the Commissioner of the Social Security Administration is

6   REVERSED and REMANDED for further administrative proceedings consistent with this

7   decision. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

8

9   IT IS SO ORDERED.

10

11  Dated:   **March 9, 2022**                    /s/ Erica P. Grosjean

                                                                     UNITED STATES MAGISTRATE JUDGE